UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

   *Plaintiff*,

 *vs.*               Case No. 18-cr-117-jdp

LARRY WOODS,

   *Defendant*.

---

## SENTENCING MEMORANDUM

Larry Woods will spend the next 12 years in state prison. He was once a police officer. And now he's a convicted child molester. Inmates are unlikely to welcome him to his new home. Acclimating will be a challenge.

Woods won't leave that home until July 2031. He'll be 75. Today's first-graders will be old enough to smoke. We'll be sharing the roads with today's kindergarteners. And there won't be unfinished business with Woods that federal prison can accomplish. Confining him in August 2031 won't bear fruit that the previous 144 months did not.

A clear-eyed consideration of Woods' state sentence, its relationship to the § 3553(a) factors, and his guidelines range show that the Court should impose a 10-year concurrent prison term.

FEDERAL DEFENDER SERVICES<br>OF WISCONSIN, INC

**1.    The circuit court considered Woods's federal criminal conduct as aggravating factors in its own 12-year sentence.**

On September 27, 2019, Woods appeared for sentencing in Rock County circuit court. He had pleaded guilty in July to repeatedly sexually assaulting the same minor victim underlying his federal guilty plea. At the sentencing hearing, the prosecution argued for 10 years' imprisonment followed by 10 years' of supervision. Woods's counsel urged the circuit court to impose a five-year prison term before five years' supervision.

Neither side got what it asked for. The Honorable John M. Wood, Rock County Circuit Judge, imposed a 12-year prison term. The circuit court's analysis was thoughtful and detailed, covering about 16 transcript pages. It was also an unsparing look at Woods and his crimes; it took nearly 20 minutes but felt much longer.[1]

It's worth revisiting the circuit court's explanation because the remarks reveal that its 12-year prison term was based on a comprehensive review of Woods and his crime. Whatever one might say about its analysis, one wouldn't call the approach "confined," "narrow," or "limited" in scope.

State court sentencing isn't all that different from its federal counterpart. The circuit court spoke directly to Woods. "Mr. Woods, as you well know given your prior occupation, my obligation is to try to achieve a number of objectives

---

[1] A copy of the transcript is attached as Exhibit A. The undersigned also attended the sentencing hearing in person.

with regard to sentencing, and that applies to every individual that sits in the seat that you're currently occupying." (Exh. A, 21-22.) Those objectives were roughly equivalent to the § 3553(a) goals applied at a federal sentencing: "protection of the community, punishment, rehabilitation, and specific deterrence." (Exh. A, 22.)

The circuit court then explained that in its effort to achieve those objectives, it considers facts and circumstances that it breaks "into three general categories." (Exh. A, 22.) Again, these categories should be familiar to any federal court: "the seriousness of the offense, the history and character of you, the offender, and finally the needs of our community which certainly include the needs of the victims." (Exh. A, 22.)

The offense's gravity was not lost on the state court. Among the aggravating factors, it underscored two that are germane to Woods's federal transportation crime here. First, it described how Woods's use of hotels and his car helped conceal his crimes. "The victim, herself, reported engaging in sexual intercourse two to three times in a hotel in May of 2018. She reported engaging in oral sex over 100 times at hotels and in Mr. Woods' vehicle." (Exh. A, 23.

This aggravating factor captures the primary evil that Woods's transportation crime produces. He drove her out-of-town, including across state lines, to facilitate his state crimes. After all, transporting victims separates them from those who would intercede: family, teachers, and friends. The "privacy" was instead a means for concealing "their secret." Unsurprisingly, Woods wasn't keen

for his conduct to be exposed. "She reported that Mr. Woods told her not to tell anyone." (Exh. A, 23.) And she posed as his "daughter" when checking-in to motels. (Exh. A, 24.) This ruse is more likely to succeed in places where they wouldn't be recognized.

Woods's travel wasn't meant to hide their "secret" relationship at all. It was to conceal his crimes. As the circuit court noted, "I hesitate to even classify—characterize this as a relationship. It's offensive to the whole term relationship to be quite honest with you." (Exh. A, 31.)

The circuit court also pointed to the harm Woods did to his victim, which the travel reinforced. In its view, "there have been no physical injuries that we know of, but the emotional trauma cannot be understated." (Exh. A, 25.) Most damaging is that the "victim still sees Mr. Woods as her boyfriend." (Exh. A, 26.) This is at least in part due to the fact that he spent many overnights with her as any "adult" couple might. The travel and motel-stays must have reinforced her "warped [] perspective," *viz.*, that she had the "emotional maturity" to engage in an adult, romantic relationship. (*See* Exh. A, 26-27.) But she didn't, and the travel supported the lie.

Given its opprobrium, the circuit court's summation wasn't surprising. It didn't pull punches when combining these aggravating factors: "this kind of conduct shocks the conscience of the entire community." (Exh. A, 31.) Strong words. It observed, quite sensibly, "[w]hat mother and father would think that

their child's at risk being in the presence of a retired police officer of twenty-five to thirty years? No one would." (Exh. A, 31.)

The circuit court delivered on its harsh assessment. It found the prosecution's recommendation inadequate. It confidently concluded instead that the crimes' gravity called for 12 years. Its remarks leave no doubt that if it had thought more prison time were called for, it would have ordered a longer term.

This Court should have no doubt that the circuit court looked at Woods' conduct writ large, was appalled, and delivered a punishment it found equal to his appalling crimes. Put another way, a judge considered the travel and overnights. It explained in open court their aggravating impacts. And these aggravators contributed to its conclusion that Woods earned a 12-year prison sentence.

### 2. Confining Woods in prison after July 2031 is greater than necessary to achieve the goals of sentencing.

The state's 12-year prison term is thus the lens through which the Court must analyze its sentencing options here. The earliest Woods could go into Bureau of Prisons custody is in July 2031. He will be 75 years-old, and he will have spent the preceding 12 years in state prison. Respectfully, release in August 2031 achieves nothing that July 2031 does not.

For starters, retribution doesn't counsel anything beyond July 2031. The circuit court, made up of elected judges, is a fair proxy for the community's

outrage. A Rock County judge who is insensitive to the community's need for justice won't last long. And the judge here called Woods's conduct "disgusting." (*See* Exh. A, 29.)

The judge then comfortably used the phrase "shocks the conscience of the entire community" and decided that Woods should be imprisoned for the next 12 years. It's hard to see how the circuit court's assessment and response fall short of what his crimes call for.

At a less abstract level, it doesn't make sense to add federal prison time based upon the travel and overnights that already aggravated his state sentence. It's not as if the circuit court, in reaching its sentence, built silos around his travelling with the victim or his overnight stays with her. Section 1 above shows the contrary. It didn't leave those aspects of Woods' crimes for another court to handle. It put them front and center in its own determination.

Reasonable minds might disagree on whether release in July 2031 is sufficient but not greater than necessary to achieve sentencing's goals. August 2031 or beyond is difficult to justify because those additional days are 12 years away. But one can imagine a justification that isn't outright frivolous.

That said, a consecutive sentence is an ambitious stretch with bizarre implications. A total prison term of 22 years is simply too long. Prior defendants who have done much worse for far longer and received far lower sentences.

Woods doesn't belong among the defendants who get sentences of two decades or more.

The message a consecutive sentence would send is one the Court should avoid. Sentencing Woods to 10 years' imprisonment consecutive to the state sex crimes' 12-year term implies a rough equivalence between his transportation crimes and his sexual assault crimes. But there isn't one. The transportation is felonious conduct, but it doesn't have near the gravity that contact offenses do. The travel and overnights do not make the sex crimes nearly twice as serious. Or rather, half of Woods' crime was not driving the victim to motels. Rather, his driving her is one of several moons orbiting the core sex crimes.

The Court also should conclude that the 12-year term achieves deterrence and protects the public. For those who are willing to commit sex crimes, additional time for travel and overnights is unlikely to have a measurable deterrent effect. Plus, after Woods' 12-year term he'll be on both state and federal probation; he'll also have to register as a sex offender. If his good health continues through his prison term, it'll be near impossible for him to commit a similar offense with two agents' looking over his shoulder. And if the circuit court is comfortable with Woods' return at age 75 to its constituency's community, this Court should take care before second-guessing it.

### 3. A concurrent 10-year prison term comports with the sentencing guidelines as well as accounts for Woods's aging.

A 12-year concurrent term is still greater than necessary to achieve sentencing's goals. Woods' state conviction is for relevant conduct and isn't properly counted as criminal history. The defense maintains its objection to the presentence report. In past cases, the undersigned has failed to persuade the United States Probation or this Court to apply such a narrow definition of relevant conduct. The defense urges the Court not to depart from the settled understanding of USSG §1B1.3.

The state conviction does not score criminal history points because it's for relevant conduct—it's for the same course of conduct with the same victim. *See* USSG §1B1.3. Therefore, Woods has a criminal history category of I. (*See* DE 38.) His offense level remains 29. (*See* PSR, ¶ 33.) This puts his properly calculated guidelines range at 87 to 108 months. The 10-year statutory minimum for Woods still over-punishes him because it's a year longer than the sentencing guidelines' high-end. A concurrent 12-year term exceeds the guidelines range by 3 years.

A 10-year concurrent term not only reflects the sentencing guidelines range but it also minimizes any compassionate-release issue that may arise. It wouldn't be at all surprising if Woods were to die in the next 12 years. And a situation may arise that qualifies him for compassionate release—an opportunity to pass at home with some dignity. The defense learned the hard way in *United States v. Kurt Epps*,

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC

15-cr-19-jdp, that securing compassionate release from one government is a difficult task to complete when time is short. When two governments are involved, satisfying each's compassionate-release regime is a practical impossibility.

A 10-year term for Woods avoids this problem for his 12-year term's final years, *i.e.*, the years when he's oldest. If he's 74 and dying, the federal and state systems' moving parts are too many to quickly respond to an emergency. He'll have served an above-guidelines sentence at that point anyway, and he'll still be locked up. A federal sentence would only serve as an extra bureaucratic layer without any § 3553(a) justification.

Dated at Madison, Wisconsin, this November 4th, 2019.

Respectfully submitted,

*/s/ Peter R. Moyers*
Peter R. Moyers
Counsel for Larry Woods

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
peter_moyers@fd.org